**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcos Antonio Lomeli,<br><br>                  Petitioner,<br><br>vs.<br><br>Eric H. Holder, Jr., Attorney General<br><br>               Respondent. | No. CV-11-02340-PHX-NVW<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER** |

This case was referred to this Court pursuant to 8 U.S.C. § 1252(b)(5)(B) for the limited purpose of making a judicial determination regarding Petitioner's disputed claim of United States citizenship. The relevant law and many of the relevant facts are not disputed.

The parties agree that the relevant law for determining whether an individual has acquired United States citizenship is the law in effect at the time of the person's birth. In order to establish he acquired citizenship through his mother, Petitioner bears the burden to establish his mother was physically present in the United States for ten years between her date of birth, December 11, 1930, and prior to Petitioner's date of birth, April 24, 1955. 8 U.S.C. § 1401(a)(7) (1952). In order to establish he acquired citizenship through his mother, Petitioner must additionally establish Ms. Lomeli was physically present in the United States for five years between her fourteenth birthday, December 11, 1944, and Petitioner's date of birth, April 24, 1955. 8 U.S.C. § 1401(a)(7) (1952).

On May 16, 2013, an evidentiary hearing was held during which Petitioner testified and the Court made evidentiary rulings and findings on the record in open court.

The following findings of fact and conclusions of law supplement, but do not alter, those made on the record.

## I.     FINDINGS OF FACT

1.     Petitioner's mother, Raquel Lopez Lomeli ("Ms. Lomeli") was born in Lincoln, California, on December 11, 1930.

2.     Ms. Lomeli moved to Guadalajara, Jalisco, Mexico, with her mother and three elder siblings no later than 1932.

3.     Ms. Lomeli's younger sister, Isabel Lopez (a.k.a. "Isabel Estrada"), was born in Guadalajara, Mexico, in 1935.

4.     Ms. Lomeli's younger sister, Maria Lopez (a.k.a. "Maria Garcia"), was born in Guadalajara, Mexico, in 1938.

5.     Ms. Lomeli's cousin, Bertha Guzman, was born in Guadalajara, Mexico, on September 22, 1938.

6.     Ms. Lomeli's younger brother, Jose Ociel Lopez, was born in Guadalajara, Mexico, in 1942.

7.     Ms. Lomeli's youngest sibling, Salvador Lopez (a.k.a. "Chavito") was born in Guadalajara, Mexico, in 1946, and was handicapped.

8.     From 1932 until her marriage in 1951, Ms. Lomeli resided with her mother and siblings in their three bedroom family home in Guadalajara, Mexico.

9.     Ms. Lomeli's family home in Mexico was located at 1026 Federation, Sector Liberty, Guadalajara, Jalisco, Mexico.

10.     While living at 1026 Federation, Sector Liberty, Ms. Lomeli slept in one bedroom with her sisters, Isabel Estrada and Maria Garcia.

11.     At their home at 1026 Federation, Sector Liberty, Guadalajara, Jalisco, Mexico, the Lomeli family also owned a shoe shop where they made and sold shoes.

12. Ms. Bertha Guzman worked at the Lomeli family's shoe shop in Sector Liberty, Guadalajara, Jalisco, Mexico, from 1947 until 1953, and saw Ms. Lomeli at the Lomeli family home almost every day.

13. Ms. Lomeli married Salvador Lomeli ("Mr. Lomeli") in a civil ceremony on April 20, 1951, and a religious ceremony on May 13, 1951, in Guadalajara, Mexico.

14. From the date of her marriage in 1951 through the date of Petitioner's birth in 1955, Ms. Lomeli's primary residence was in Mexico.

15. After their marriage in 1951, Mr. and Ms. Lomeli rented a home near Ms. Lomeli's family home in Sector Liberty, Guadalajara, Jalisco, Mexico.

16. Petitioner's elder brother, Aurelio Lomeli, was born in Mexico on March 6, 1952.

17. Petitioner's elder sister, Maria Raquel Lomeli, was born in Mexico on July 29, 1953.

18. In 1953, Ms. Lomeli lived in Tijuana and worked in the fields in the United States for varying hours during the day for nine to ten months.

19. In 1954, Ms. Lomeli was physically present in Oxnard, California for nearly one year.

20. The number of hours that Ms. Lomeli worked in the United States between 1951 and 1955 did not amount to five years of physical presence.

21. Petitioner Marcos Antonio Lomeli ("Mr. Lomeli" or "Petitioner") was born in Guadalajara, Mexico, on April 24, 1955.

22. Petitioner's younger sister, Maria Alejandrina Lomeli Lopez, was born in Mexico on November 26, 1956.

23. Petitioner's younger sister, Silvina Lomeli, was born in Mexico on March 13, 1959.

24. Ms. Lomeli, Salvador Lomeli, Petitioner and his sisters entered the United States in 1960.

25. In 1968, Plaintiff's mother filed an N-600 Application for Certificate of Citizenship on Petitioner's behalf.

26. On May 13, 1968, an officer of the United States Immigration and Naturalization Service ("INS") interviewed Ms. Lomeli, under oath, concerning her Application for a Certificate of Citizenship on Petitioner's behalf.

27. During the interview, Ms. Lomeli testified, under oath, she moved from the United States to Mexico in 1932, worked in the United States in 1953 for nine or ten months, and lived in Oxnard, California for almost a year in 1954.

28. Following the interview, the INS denied Ms. Lomeli's application for an N-600 Certificate of Citizenship on Petitioner's behalf on June 20, 1968.

29. Petitioner filed a second N-600 Application for Certificate of Citizenship on November 22, 1991.

30. The INS denied Petitioner's second N-600 Application on September 15, 1994.

31. On December 9, 1992, Petitioner filed an Application for Adjustment of Status to register as a Legal Permanent Resident under 8 U.S.C. § 1259.

32. The INS denied Petitioner's application to register as a Legal Permanent Resident on August 13, 1993, for lack of good moral character.

33. Petitioner entered criminal custody in 1998 and was released in 2004.

34. On June 14, 2006, Petitioner filed his third N-600 Application for Certificate of Citizenship on June 14, 2006.

35.     The United States Citizenship and Immigration Service ("USCIS") denied Petitioner's third N-600 Application for Certificate of Citizenship on November 9, 2006.

36.     The Department of Homeland Security initiated removal proceedings against Petitioner, by serving him with a Notice To Appear and charging him with removability on November 9, 2006.

## II.   CONCLUSIONS OF LAW

1.     Petitioner failed to establish by a preponderance of the evidence that his mother was physically present in the United States for ten years between her date of birth, December 11, 1930, and prior to Petitioner's date of birth, April 24, 1955.  *See* 8 U.S.C. § 1401(a)(7) (1952).

2.     Petitioner failed to establish by a preponderance of the evidence that Ms. Lomeli was physically present in the United States for five years between her fourteenth birthday, December 11, 1944, and Petitioner's date of birth, April 24, 1955.  *See* 8 U.S.C. § 1401(a)(7) (1952).

3.     Petitioner did not acquire United States citizenship through his mother pursuant to 8 U.S.C. § 1401(a)(7) (1952), because Ms. Lomeli lacked the requisite physical presence in the United States prior to Petitioner's birth.

4.     The Court lacks authority to confer United States citizenship on Petitioner through any equitable means such as estoppel or laches.

5.     Even if the Court had the authority to confer United States citizenship through equitable means, which it does not, Petitioner failed to establish Alexander Gonzalez's ("Mr. Gonzalez") decision not to issue a detainer for Petitioner constituted affirmative misconduct, where Mr. Gonzalez's authority was limited to determining whether to place Petitioner in immigration detention under 8 C.F.R. § 287.7.

6. Even if the Court had the authority to confer United States citizenship through equitable means and the decision not to issue a detainer amounted to affirmative misconduct, Petitioner failed to establish he would experience "serious injustice" if Respondent were estopped from challenging his assertion of citizenship.

7. Even if Petitioner relied on Mr. Gonzalez's 2004 detainer summary, the reliance cannot be reasonable where Mr. Gonzalez is not authorized to adjudicate citizenship claims and the United States Department of Homeland Security initiated removal proceedings and repeatedly denied Petitioner's claim he acquired citizenship through his mother.

8. Consequently, even if the Court had authority to confer citizenship by equitable means, which it does not, Petitioner failed to show equitable estoppel or laches is warranted.

9. The Respondent did not waive any claim that Petitioner is not a United States citizen where it consistently denied all three of Petitioner's N-600 Applications for Certificate of Citizenship and denied his 1992 Application for Adjustment of Status for lack of good moral character.

IT IS THEREFORE ORDERED that Declaratory Judgment be entered in the form filed herewith.  The Clerk shall terminate this action.

IT IS FURTHER ORDERED that the Clerk of this Court file with the Clerk of the Court of Appeals copies of this order and the Declaratory Judgment filed herewith.

Dated this 16th day of May, 2013.

_____

Neil V. Wake
United States District Judge